**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: | No. 09-01939 (PAM/JSM) |
| NATIONAL ARBITRATION FORUM LITIGATION | **ORDER** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## E-DISCOVERY PROTOCOL

The above matter came before the undersigned United States Magistrate Judge on December 2, 2009, upon the parties' efforts to develop a protocol for the preservation and production of electronically stored information. The Court, upon all of the files, records, the stipulation submitted by the parties, the proceedings herein and for the reasons stated on the record, now makes and enters the following Order.

IT IS HEREBY ORDERED that:

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, all plaintiffs and defendants in this Action (collectively, the "Parties," and singularly, a "Party"), must comply with the following obligations in this litigation:

**I.   Document Preservation.**

   A.   The Parties shall, during the pendency of this Action, comply with their duty to preserve all documents, electronically stored information ("ESI"), and tangible objects reasonably anticipated to be subject to discovery. Pursuant to Fed. R. Civ. P. 26(b)(1), the relevant information preserved need not be admissible at the trial if the discovery of the documents, ESI, or tangible objects appears reasonably calculated to lead to the discovery of admissible evidence. This duty to preserve extends to reasonably accessible documents, ESI, and tangible objects in the possession, custody, and control of the Parties to this Action, and any employees or agents reasonably expected to possess materials anticipated to be the subject of discovery in this action ("Custodian(s)"), *provided* that such persons

have received notice of the preservation obligations under this Agreement. Nothing herein relieves a Party from its obligations under I.D.2.

    1.    The term "ESI" refers to any electronically stored information in the possession, custody or control of the Parties that are email or active user files, including by way of example and not by way of limitation: email, calendars, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information reasonably anticipated to be subject to discovery pursuant to the Federal Rules.

B.    The term "Document(s)" is synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and recordings," "photographs," "original," and "duplicate" defined in Fed. R. Evid. 1001. Document means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any medium upon which intelligence or information can be recorded or retrieved- including, but not limited to, documents fixed in tangible media or electronically or digitally stored on disk or tape in a native format. This includes, without limitation, all ESI.

C.    "Preservation" is to be interpreted in accordance with the Federal Rules of Civil Procedure to accomplish the goal of maintaining the integrity of all documents, ESI, and tangible objects reasonably anticipated to be the subject of discovery in this Action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

D.    The Parties must take reasonable steps to preserve documents in their original condition and ESI in its native format. Such steps include, without limitation:

    1.    Identifying all Custodians;

    2.    Directing Custodians and appropriate IT personnel with possession, custody, and control over relevant documents and ESI to preserve information identified above (this obligation does not require the Parties to provide a copy of this Agreement to custodians so long as reasonable steps are taken to inform Custodians of the substantive provisions of this Agreement, as well as their individual obligations thereunder);

        3. Taking reasonable steps to preserve in their current state all active files from electronic data sources that contain data that is within the scope of this Agreement;

        4. Taking reasonable steps to preserve any existing transcripts or text files reflecting relevant contents of any voicemail systems owned by the Party; and

        5. Taking reasonable steps to preserve all security keys, encryption/decryption information, and policies that exist or are related to any data contemplated by this Agreement for the sole purpose of accessing the data.

    E. A Party need not preserve information electronically stored on servers, hard drives, or similar locations not reasonably likely to contain information within the scope of this Agreement.

    F. By agreeing to preserve information in accordance with the terms of this Agreement, the Parties do not waive any objection to the relevance, discovery, admissibility, or format of production of any document, ESI, or other tangible object.  In particular, the Parties agree that by preserving any document, ESI, or other tangible object, a Party to this agreement does not concede that such document, ESI, or other tangible object is relevant, discoverable, or admissible, and no Party hereto shall use the fact of such preservation in support of an argument that such document, ESI, or other tangible object is relevant, discoverable, or admissible.

## II. Format for Production

    A. **Paper Documents in TIFF:** Each Party will produce paper documents (i.e., those documents not kept electronically by a Party in the ordinary course of business) in single-page TIFF format at the producing Party's cost, unless the Court orders that the costs associated with the production be paid by the requesting party or shared by the requesting and producing parties.  Each TIFF format file of a paper document shall contain Bates number range. OCR will not be provided for hard copy files.

    B. **Electronic Documents in TIFF:**

        1. Each Party will produce electronic documents, including documents from Lotus Notes, in TIFF format at the producing Party's cost, unless the Court orders that the costs associated with the production be paid by the requesting party or shared by the requesting and producing parties.  Each TIFF format file of an electronic document must be created directly from the original electronic document; a Party may not create a TIFF format file of an electronic document by printing out paper

    copies of that electronic document and then scanning that paper copy of the electronic document. In the event that the producing Party cannot adhere to the requirements of this paragraph with regard to specific electronic documents, the producing Party will confer with the requesting Party to determine a mutually agreeable production methodology.

  2. For each TIFF format file created from an electronic document, the producing Party will generate and preserve an MD5 hash value at the time the document is converted to TIFF format; this hash value must be produced to the requesting Party if and when the native format of the file is also produced to the requesting Party. Native files must be preserved and remain unchanged from the time the hash values are created to the time, if ever, those native files or concomitant hash values are produced to the requesting Party.

C. **Technical Specifications for All TIFF Format Files:** All TIFF format files will conform to the following specifications:

  1. All TIFF formatted files will be single page, black and white, dithered (if applicable), Group IV TIFF at 300 X 300 dpi resolution and 8 ½ X 11 inch page size, except for documents requiring different resolution or page size. The requesting Party may request that specific .ppt or .xls files be produced in color. The requesting Party shall bear the additional cost of producing color files.

  2. A unitization file, in standard format (e.g., Summation DII or .csv file) showing the Bates number of each page and the appropriate unitization of the documents, must accompany each TIFF formatted file (beginning number, end number of each document).

  3. The Parties agree that spreadsheet files and slide presentations shall be produced in TIFF format but that native files may be requested in accordance with E. below.

  4. The Parties' IT professionals shall jointly discuss a mutually agreeable de-duping procedure. Any agreed-upon procedure regarding de-duping shall be reduced to writing and distributed to counsel for the Parties. [or, The Parties' IT professionals agree that de-duping at the custodian level (i.e., within custodian) is sufficient.]

D. **Metadata for Electronic Documents:** Each Party will produce as follows certain metadata fields associated with each electronic document produced in TIFF format:

4

1. For electronic documents that are not emails, each Party will produce (to the extent such metadata exists):
   - file name (including extension)
   - creation date
   - modified date
   - title
   - subject
   - author
   - company
   - last saved
   - file path (for files located on a shared space or server only)
   - custodian of the record (for files located on the hard drive of a personal computer only)

2. For electronic documents that are emails, each Party will produce (to the extent such metadata exists):
   - sent date
   - received date
   - to name
   - to address
   - from name
   - from address
   - cc name
   - cc address
   - bcc name
   - bcc address
   - subject
   - "re" or "fwd" line
   - replies sent to
   - attachment count
   - parent id

To the extent a name and address metadata field are combined, a Party need only produce the combined field. The Parties must produce all files attached to each email they produce to the extent the attachments are reasonably accessible. To the extent a Party produces electronic documents attached to emails, a Party will produce the metadata for those attached electronic documents in accordance with paragraphs 1 or 2.

E. **Supplemental Production of Specific Native Format Documents:** A Party may request native format files of electronic documents from a producing Party, in accordance with the provisions of this paragraph.

   1. No requesting Party may seek to compel the production of native format files of electronic documents on a wholesale basis.

5

    2.    If at any time a producing Party deems a requesting Party's demand for native format documents to be excessive, the request for native documents will be carried out under the following protocol:

        a.    The requesting Party would identify in writing those native format files for which it seeks production and the basis for seeking each native format file.

        b.    Within fourteen (14) days of receiving such a request, the producing Party will respond in writing, setting forth their position on the production of the requested native format files.

        c.    If the Parties are unable to agree as to the production of the requested files in native format, the Parties will submit the matter to the Court or, upon agreement, a special master.

        d.    If the requesting Party believes that the explanation supporting their need to review native format files will reveal work product, the requesting Party may, at its discretion, submit such explanation directly to the Court or special master for in camera review.

        e.    The Court or special master will have the discretion to share with the producing Party any explanation supporting the requesting Party's need to review native format files that is submitted for in camera review.

    3.    The producing Party shall produce native format files of spreadsheets if:

        a.    The TIFF format file of the spreadsheet is difficult to read as formatted or illegible;

        b.    The Native format file would be necessary in viewing embedded information that does not otherwise appear in the TIFF formatted file of the spreadsheet; or

        c.    The native format file is necessary to understand or verify the information contained in the TIFF formatted file of the spreadsheet.

F.    **Applicable Load Files:**    The parties shall work together to provide suitable load files.

6

**III.**     **Continuing Obligations**

    A.    To expedite discovery of relevant electronic evidence and reduce costs, the Parties will discuss and attempt in good faith to resolve all issues before bringing them to the Court. This responsibility shall be continuing, unless otherwise ordered by the Court.

    B.    Without waiving any applicable privileges or objections, the Parties shall enter agreements as discovery progresses relating to "clawback" and "quick peek," and may execute further agreements relating to testing or sampling procedures as appropriate.

**IV.**     **Exchange of e-discovery materials**. Prior to **December 23, 2009**, the Parties shall exchange the following information:

    A.    A list of Custodians of relevant electronic materials, including a brief description of each person's title and responsibilities;

    B.    A list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system;

    C.    The name of the individual responsible for the Party's information technology;

    D.    The name of the individual responsible for the Party's electronic document retention policies ("the retention coordinator");

    E.    A general description of the Party's electronic document retention policies; and

    F.    A description of any issues known or anticipated in connection with e-discovery.

**V.**     **All Parties to Coordinated Proceedings:** The obligations created by this agreement apply to all Parties to this Action. This Agreement shall continue in full force and effect until order of the Court or until this litigation is terminated by a final judgment.

Dated:     December 7, 2009

                                                     s/ *Janie S. Mayeron*
                                                     JANIE S. MAYERON
                                                     United States Magistrate Judge